Good morning. May it please the Court, my name is C.B. Kirshner, appearing on behalf of Petitioner Appellant Kyle Rodney, and I would like to reserve two minutes for rebuttal, if possible. The district court in this case ruled Claims 3 and 9 of Mr. Rodney's amended petition to be procedurally defaulted without considering whether or not he could overcome the default pursuant to Martinez v. Ryan. Now, Respondents have essentially conceded three out of the four Martinez elements are met in this case. The only remaining question is whether the underlying ineffectiveness claims are substantial. And do we need to decide that, or do we need to send the whole thing back to the district court for not – because you didn't address Martinez? You can absolutely send the entire thing back to the district court for just that purpose. Mr. — Counsel, Judge Gould, I had the same question in my mind as Judge Berzon. That is, is there a per se requirement that Martinez be considered? Well, in this case, Martinez was raised before the district court, and the district court still didn't consider it. I don't know if there is a per se rule that it has to be considered, but in a case like this where it was raised before the district court and where Mr. Rodney was never  Then it shouldn't be ignored without analysis by the district court if the issue is raised. Yes, Your Honor. I would agree with that. It should be considered by the district court. Additionally, this is a case — I suppose the other possibility is some middle ground that says, well, we don't decide whether it's substantial, but we at least consider whether there's a substantial question, whether it's substantial, essentially. Yes. Right. Yes. This Court certainly has the authority to do either. If this Court believes that we have made a sufficient showing that the claims are substantial, this Court could simply — Well, as to that, here's my question. It seems to me you have made an adequate showing that there was — there was a lot more that could have been done with regard to questioning the medical evidence, presenting more medical evidence, and so on. But I couldn't find any hookup to the crime. Why — I mean, as I understand it here, this guy was — the defendant, for example, hit somebody over the head with a baseball bat, right? Is that right? The co-defendant did. Co-defendant. But he was responsible for it. Yes. Okay. So the question is, would it make any difference as to an attempted murder conviction how injured the defendant — the victim was? In this case, it would make a difference for several reasons. One, the prosecutor actually argued that the extent of the injuries was relevant not just to the conspiracy to commit murder charge and the attempted murder charge, but also to the battery charge, because it's relevant to whether or not there was a substantial bodily injury, and to the remaining charges, which all included use of a deadly weapon. And the prosecution actually argued to the jury — And a baseball bat over one's head isn't per se a deadly weapon? It's not per se. Well, close to per se. In this case, it was not — Close to per se. It was not a Major League Baseball bat. It was a small kind of souvenir fishing type of bat. Okay. But it also goes not just the extent of the injuries to those elements of those crimes, which were not subjected to adversarial testing by defense counsel, but it also goes to the overall credibility of the victim, which was certainly at issue here. For that part, I understand. Yeah. He's the one that said that one of the two defendants said, now you're going to die, things like that. There was no other evidence supporting that other than the victim's testimony. And if the jury had heard that he testified to suffering seizures and brain injury and severed nerves and then heard from medical experts that none of that was true, they certainly had reason to doubt the remainder of his testimony and would have been so instructed. But again, it was also relevant to the elements of several of the offenses, the extent of the injuries. So I would say that, yes, there is at least at this stage reason for that reasonable jurist could debate whether or not there was prejudice under the Strickland standard. And again, we don't have to meet Strickland prejudice analysis at this point. For Martinez's purposes, it's a slightly relaxed prejudice standard. And we certainly have met that based on the medical records that Mr. Rodney included with his petition, as well as the supplemental records that we asked to be considered at this time. And again, if this case were remanded for further factual development, we could present those records as well as answer several of the questions, hopefully all of the questions that Respondents actually pose in their answering briefs, such as whether or not there are other medical records out there that have never been disclosed, whether they would support or dispute the victim's testimony, whether an expert would have been helpful to the defense, and perhaps the biggest question, whether or not trial counsel had a strategic reason for not objecting to lay medical testimony and not presenting exculpatory medical evidence on behalf of his clients, all of which should be answered. And if this case were remanded to the district court, we would certainly be requesting a hearing and an opportunity to develop those facts. And you would be representing him at this point? Yes, Your Honor. Now that we've been appointed, the Federal Public Defender's Office, and I expect myself personally, would be assisting with the remainder of the case. So we would continue representing him at this point. If there's no further questions, I will reserve the remainder of my time for rebuttal. Thank you. Good morning, Your Honors. And may it please the Court, Erin Biddick on behalf of the Respondents' appellees. I first would like to clarify the record. Rodney did not raise a Martinez argument to the district court. Rather, he merely stated in an unauthorized surreply that Martinez did apply in this case because he did not have counsel in a state habeas petition. And that was Rodney did his actual petition? Is that what you're referring to? Or are you talking about counsel not raising that? In the district court, Rodney represented himself, and he raised that argument in an unauthorized surreply to our reply in support of our motion to dismiss. So you're saying not that he didn't raise it, but that he didn't properly raise it? He didn't properly raise it, and the district court was not able to consider it. And if you look at the order — Why was it not able to consider it? I'm sorry. He — the district court did not consider the unauthorized surreply that he — that Rodney filed, so the district court did not consider his Martinez argument. He explicitly didn't consider the unauthorized surreply, or just didn't? It's — the district court did not explicitly not consider the surreply. The court actually struck our — denied our motion to strike the surreply. However, there is nothing in the order that shows that the district court considered the arguments raised in the surreply. That's exactly the problem. I'm sorry. Well, if you strike it, then it's there, and if it's there — but aside from that, in a situation where, after Martinez, you're dealing with a fairly unusual situation where there was no counsel on state PCR — I mean, it's unusual now, in my experience And there is — are procedural defaults. Wouldn't a district judge just say, wait a second here? Yes, Your Honor. I can't speak to what the district court thought when considering that argument that was raised. But the Martinez claim — Mr. Rodney's ineffective assistance of trial counsel claims are just without merit. There is absolutely no prejudice here. The medical records that he seeks to introduce for the first time on this appeal and the medical records he relied on in the lower court show that he — the victim received substantial bodily harm. Even if the victim was testifying — exaggerating his testimony, there was no prejudice to any of counsel — What about the suggestion that he — since he was telling some fairly far-fetched stories about what happened to him, or that's the claim, that his credibility in general would be affected? Well, trial counsel did challenge his credibility during his cross-examination. So the jury already had the opportunity to — On this basis? On the basis that he was making up stories about what happened to him? Yes, Your Honor. The trial counsel made statements such as if your medical records would say, for example, that you were having seizures, and the victim said they should, but essentially I'm not really sure. That's a little different than having the records there and showing that they don't, in fact, show that. Yes. But independent witnesses testified at trial that they witnessed Rodney having seizures. They personally witnessed him having the seizures. The medical records also state that he had numbness of the face, which was something he also testified. He had what? I'm sorry. Numbness of the face. He testified at trial that he had that.  with his — There's also the — his testimony that when he went to the hospital, the doctor said something to the effect of this infection could have gone to your brain, but yet there was nothing in the medical records where the doctor had advised him as to that. So wouldn't have that been something helpful to have at trial? It would have been helpful to have at trial. However, there isn't any prejudice to Rodney that he didn't have those records because all the state had to do was prove substantial bodily harm. What about for the attempted murder charges? Well, there were — there was testimony that is undisputed that Rodney received several lacerations from a knife, that he required approximately 74 sutures. There was independent testimony from a witness that when she arrived, she was the first one to arrive on scene, that he was — there was blood everywhere. It was the worst that she had ever seen. The paramedics that first arrived on scene testified that the victim had to go to a certain hospital that had a trauma center. So the record overwhelmingly demonstrates the elements of the crime, and the state provided overwhelming evidence to support that. So there was no prejudice to the — to Rodney that the medical record — this medical evidence wasn't in any way challenged or these medical records didn't come in. If the judges don't have any other questions, I would — Well, if we thought that the issue should have been considered by the district court and we simply remanded to consider it, is that a problem? I believe it would be futile just because his ineffective assistance of trial counsel claims are without merit. But other than that, I don't believe it would be a problem. Okay. Thank you. All right. Thank you. I would just respectfully request this court affirm the district court's findings. Very briefly, Your Honors. First of all, the Martinez issue was not just raised by Mr. Rodney. It was also raised by Respondents in their reply to the opposition, a motion to dismiss EOR-1168. They discussed the — why they did not think Martinez applied for several paragraphs. So the issue was before the district court. They — the district court had the opportunity to address this issue and opted not to do it, but it is not being raised for the first time on appeal. Second of all, the fact that counsel for Respondents and myself might debate exactly what is said in the medical records, we're interpreting them differently, that's exactly why this case should be remanded to the district court so we can consult a medical expert as opposed to having two attorneys try to decipher medical records. And finally, with regards to — Do you envision an evidentiary hearing in the district court? We would certainly be requesting an evidentiary in front of — evidentiary hearing in front of the district court. Whether or not the court would grant us one, I don't know. If this Court instructed the lower court to, hopefully, that would be followed. Certainly, we could do as much as possible with affidavits and submitting evidence that way if the lower court opted not to give us a full hearing. And finally, I would just point out specifically the example that counsel for Respondents mentioned as far as the trial attorney's attempt, and I use the term lightly, to impeach the victim with his medical testimony. Trial counsel did make a question saying, well, if you're testifying you had seizures, that would be supported by the medical records, right? And the victim said, I don't know what's in the medical records, but it should be. That question only works as a trial attorney if you follow it up by presenting the medical records or some additional testimony from a medical expert. That's not — just that question is not impeaching the witness whatsoever. It's setting it up for impeachment, but he didn't follow through. He fouled that out by not following up, and that is evidence of counsel's deficient performance. So again, we would ask that this case be remanded to the district court with instructions to have an evidentiary hearing on the Martinez issue. Kagan. One last question from me before you step down. So in the State Nevada court, there is no counsel for postconviction relief for the first appeal. Is that accurate? Correct, Your Honor. It's discretionary. Sometimes counsel will be appointed, but it is not required. In this case, Mr. Rodney made numerous requests for counsel, but the State courts never appointed it for him. And PCR? On postconviction. On postconviction. On postconviction. And that's still the case in Nevada? Yes. All right. It doesn't sound like it's very useful in light of Martinez. I agree with that statement, Your Honor. Okay. Thank you very much. Thank you. Thank you both for your argument. The case of Rodney v. Filson is submitted, and we'll go to the last case of the day and of the week, Humes v. First Student Inc.
judges: Gould, Berzon, Marquez